# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| OLEGARIO HERNANDEZ ASTUDILLO | § | |
| | § | |
| V. | § | A-17-CV-885-LY |
| | § | (A-15-CR-236(2)-LY) |
| | § | |
| UNITED STATES OF AMERICA | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are Olegario Hernandez Astudillo's Motion to Vacate Under 28 U.S.C. § 2255 (Dkt. No. 218); and the Government's Response (Dkt. No. 211). The undersigned submits this Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

## I.  GENERAL BACKGROUND

On August 18, 2015, Movant Olegario Hernandez Astudillo("Astudillo") was charged, along with five other defendants, with three counts in a five-count indictment. (Dkt. No. 18).[1] On September 8, 2015, Astudillo entered a plea of guilty to a Superseding Information charging him with conspiracy to possess with intent to distribute 100 grams or more of heroin and 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846. (Dkt. No. 55). On November 13, 2015, the District Court sentenced Astudillo to 210 months of imprisonment, followed by five years of

---

[1] The three charges were conspiracy to possess with intent to distribute one kilogram or more of heroin, 500 grams or more of methamphetamine, and five kilograms or more of cocaine, in violation of 21 U.S.C. § 846; possession with intent to distribute fifty or more grams of methamphetamine, in violation of 21 U.S.C. § 841; and possession with intent to distribute 100 kilograms or more of heroin, in violation of 21 U.S.C. § 841.

supervised release, forfeiture of two firearms and a $100 special assessment. (Dkt. No. 131). The remaining counts were dismissed on the Government's motion. (Dkt. No. 126).

On December 4, 2015, this Court granted Astudillo's trial counsel's motion to withdraw and appointed new counsel to represent Astudillo on appeal. On August 9, 2016, the Court of Appeals for the Fifth Circuit accepted the appellate counsel's *Anders* brief, and granted his motion for leave to withdraw. The court also denied Astudillo's motion for appointment of new counsel and dismissed the appeal.

Astudillo has now filed this motion under 28 U.S.C. § 2255, arguing that he was denied the effective assistance of counsel because his trial attorney (1) induced him to unknowingly enter into an involuntary plea agreement; (2) failed to properly inform him of the accurate sentencing range under the plea agreement; (3) failed to effectively negotiate the plea agreement; (4) failed to call witnesses at the sentencing; (5) failed to retain an expert witness; and (6) failed to investigate the case and prepare for the sentencing.

## II. STANDARD OF REVIEW

Under § 2255, four general grounds exist upon which a defendant may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the District Court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The nature of a collateral challenge under § 2255 is extremely limited: "A defendant can challenge his conviction after is it presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice'

resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If the error is not of constitutional or jurisdictional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). A defendant's claim of ineffective assistance of counsel gives rise to a constitutional issue and is cognizable pursuant to § 2255. *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996).

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* A court's review of counsel's performance must be highly deferential, with a strong presumption that the performance was reasonable. *Id.* at 689; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). A court will not find ineffective assistance of counsel merely because it disagrees with counsel's trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). Moreover, "[a] fair assessment of attorney performance requires every effort to be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

To demonstrate the prejudice prong, a petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane*, 178 F.3d at 312. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Crane*, 178 F.3d at 312-313 (quoting *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997)).

## III.  ANALYSIS

As noted, Astudillo argues that his attorney rendered ineffective assistance of counsel in six ways.  As set forth below, Astudillo has failed to meet either prong of the *Strickland* test on any of these claims, and thus has not established that his attorney rendered ineffective assistance.

### A.      Voluntariness of the Plea

First, Astudillo contends that he unknowingly entered into a plea agreement due to his inability to speak or read English and his limited education, and thus his guilty plea was involuntary. He alleges that he relied on a translator for all communications with his attorney and that his attorney did not explain the terms of the agreement. However, in a sworn affidavit his attorney states that he is fluent in Spanish and never utilized a translator when communicating with Astudillo. Additionally, the attorney maintains he translated all legal documents and explained them fully to Astudillo on no less than 15 occasions where he met with Astudillo. (Dkt. No. 221-1).

But, more importantly, the transcript of the guilty plea hearing reflects that, under oath, Astudillo testified to the complete opposite of these assertions in his 2255 motion:

| | |
|---|---|
| THE COURT: | Now, with regard to the plea agreement, your agreement is set out in writing. It's been signed by you and your attorney and by the government's attorney. Before you signed this, did you meet with Mr. Martinez and discuss the agreement with him? |
| ASTUDILLO: | Yes. |
| THE COURT: | Do you read English? |
| ASTUDILLO: | No. |
| THE COURT: | So did you have this translated for you, then, by Mr. Martinez or someone before you signed it? |
| ASTUDILLO: | Yes. |

| | |
|---|---|
| THE COURT: | Do you understand the agreement? |
| ASTUDILLO: | Yes. |
| THE COURT: | And you agree to it? |
| ASTUDILLO: | Yes. |

Dkt. No. 174 at 8-9. Then, after the prosecutor spent several minutes summarizing the primary terms

of the agreement, the Court asked:

| | |
|---|---|
| THE COURT: | Mr. Astudillo, you've heard the summary of your plea agreement. As I said, the full text of that is set out in writing. Is that summary, though, what you understand your agreement to be? |
| ASTUDILLO: | Yes. |

*Id.* at 10. To be constitutionally valid, a guilty plea must be knowing and voluntary. *United States*

*v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998). But in a habeas proceeding like this one, a

"defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under

oath since sworn declarations in open court form a 'formidable barrier in any subsequent collateral

proceedings.'" *Id*. (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Astudillo provides no

reason why this principle is not applicable here. The Court therefore concludes that Astudillo is

prohibited from disavowing the sworn statements made at his guilty plea. Since those statements

conclusively demonstrate that Astudillo was fully aware of, and informed about, the nature of his

plea agreement and its terms, his claim that he his plea was involuntary fails.

**B.      Advice Regarding Sentencing Range**

Astudillo next alleges that his attorney provided ineffective assistance of counsel by

convincing him that he would be sentenced between 8 and 10 years if he pled guilty. He asserts that

his attorney "was not aware that the government intended to attribute to me the 6 kilograms of

cocaine they seized in Florida." (Dkt. No. 218 at 12).  This claim is also reviewed under the standard

set out in the Fifth Circuit's decision in *Cervantes*.  As noted there, while an attorney's promise

regarding a sentence may cause a defendant's plea of guilty to be invalid, "a defendant ordinarily will

not be heard to refute his own testimony given at a plea hearing while under oath." *Cervantes*, 132

F.3d at 1110.  Rather, a defendant may only seek habeas relief on the basis of alleged promises that

are inconsistent with sworn statements he made in open court when entering his guilty plea, if he

proves: (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the

promise was made, and (3) the precise identity of an eyewitness to the promise. *Id.*

As the plea hearing, the Court specifically asked Astudillo about anyone making any

promises to him about sentencing:

| | |
|---|---|
| THE COURT: | Mr. Astudillo, other than your plea agreement with the government, has anyone else made any promises to you that has caused you to plead guilty? |
| ASTUDILLO: | No. |
| THE COURT: | Has anyone made any promises to either of you about what your sentence is going to be? |
| ASTUDILLO: | No. |

Dkt. No. 174 at 22.  Further, the Court advised Astudillo that the sentencing range for the offense

he was pleading guilty to was a minimum of five years imprisonment, and a maximum of forty. *Id.*

at 12.  The Court also explained that the district judge would consider the Sentencing Guidelines,

make the calculations required by the Guidelines, and take into account the sentencing range

recommended by the Guidelines, but also admonished him that, "after he considers all of that, he's

got the power to sentence you anywhere from the minimum to the maximum that the statute that

you're pleading guilty to allows." *Id.* at 13-14. Further, Astudillo confirmed under oath that he "had a chance to speak to [his] attorney about the sentencing law, and how all of that might impact [his] own sentence." *Id.* at 14. Astudillo's counsel's affidavit reflects that, although Astudillo "expressed to me that he wanted to get a sentence of 8 to 10 years," counsel "never told Mr. Astudillo that he would be sentenced to between 8 to 10 years." Dkt. No. 221-1. Instead, he explained to Astudillo that "his sentence would be based on the presentence investigation that would be done. I discussed with him the penalty range for his offenses, but there was never a guarantee of what he would ultimately receive as a sentence." *Id.*

Astudillo's 2255 motion is devoid of any evidence to corroborate his assertion that he was promised a sentence in the 8 to 10 year range. As noted at the outset, for a defendant to be able to obtain habeas relief on an alleged promise that is inconsistent with sworn statements he makes at his guilty plea hearing, he must prove the precise time and place of the alleged promise, and the identity of an eyewitness to the promise. *Cervantes*, 132 F.3d at 1110. He has completely failed to do so, and this claim fails.

## C.     Negotiation of the Plea Agreement

Astudillo next claims that his attorney provided ineffective assistance by failing to effectively negotiate the plea agreement. He alleges that his attorney spent too little time with him to explain the plea agreement. Once again, this contradicts the attorney's sworn affidavit, and Astudillo's representations in open court under oath. Astudillo also alleges that because he was the first in the conspiracy to plead guilty and that he was willing to cooperate, he would have received a more favorable plea agreement but for the ineffective counsel. Astudillo provides no evidence that he communicated his intention to cooperate with either his attorney or the government. In fact, his

statements are directly contradicted by his attorney, whose affidavit states that he encouraged

Astudillo to cooperate with the government, but Astudillo refused. (Dkt. No. 221-1). Thus, this

claim also fails.

**D.      Failure to Call Witnesses at Sentencing**

Astudillo alleges that his attorney provided ineffective assistance of counsel by failing to call

witnesses during his sentencing hearing. Because "presentation of testimonial evidence is a matter

of trial strategy, and because allegations of what a witness would have testified are largely

speculative," complaints of uncalled witnesses are not favored in federal habeas review. *Coble v.*

*Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007) (quoting *Buckelew v. United States,* 575 F.2d 515.

521 (5th Cir. 1978). First, this argument is factually incorrect. A number of statements regarding

Astudillo's character were submitted to the district judge by Astudillo's counsel, as part of the

sentencing hearing. *See* Dkt. Nos. 118-123. Beyond this, Astudillo's counsel's states that he

discussed possible witnesses that could be called, but that Astudillo did not wish to call anyone,

"except for the affidavits that were submitted as part of the PSR." *Id.* Thus, Astudillo's claim is

belied by the evidence in the record.

Further, beyond the character witnesses, the only other potential witnesses Astudillo

identifies in his 2255 motion are his nephews and two women who were arrested transporting 6

kilograms of cocaine to Florida—according to the government, at Astudillo's direction. As the

government notes, to put it lightly, it is subject to question as to whether any of these witnesses

would have been willing to testify at Astudillo's sentencing. All of them were alleged to have been

involved in possessing controlled substances, and thus they likely would have exercised their Fifth

Amendment right against self-incrimination, which would have made them unavailable as witnesses.

Since Astudillo did not provide any evidence regarding any of these individual's availability to testify, and has failed to demonstrate what their testimony would have been, he has failed to show any prejudice for counsel's failure to call these witnesses at sentencing. This claim fails.

**E.     Failure to Retain an Expert**

Astudillo also alleges that his attorney provided ineffective assistance by failing to retain an expert witness, related to Astudillo's challenge to the government's assertions regarding the amount of controlled substances Astudillo should be held responsible for under the Guideline calculations. As he puts it in his 2255 petition:

> The PSR attributed to me 5 kilograms of Methamphetamine because I exaggerated in my texting messages that I was able to supply this amount. An expert witness would have testified that drug dealers always embellish their capabilities.

Dkt. No. 218 at 14. Astudillo's conclusory assertion that an expert witness would have testified that drug dealers always embellish their supply capabilities is an insufficient basis to demonstrate an entitlement to relief under § 2255. The government's evidence on this point was provided by DEA special agent Chris Solomon, who testified not only that the government had intercepted Astudillo making the claim of being able to supply 5 kilos of methamphetamine, but also offered specific evidence regarding why he believed those statements. Dkt. No. 175 at 22-23. The record shows that during the sentencing hearing, Astudillo's attorney subjected Agent Solomon to a vigorous cross examination on this point. *Id.* at 32-42. What is lacking in Astudillo's argument is any evidence of how an expert's testimony on this point would have made any difference to the outcome (saying nothing of there being no mention of precisely what an expert's testimony would have been). The point that he contends he would have made through an expert—that drug dealers often exaggerate their ability to supply drugs—does not appear to have been in doubt. Moreover, in reaching a

9

conclusion on this issue, the trial judge focused on the actual evidence supporting the claim, which showed multiple levels of corroboration regarding Astudillo's involvement in large scale transactions.

> I think the testimony—primarily relying on the testimony of Agent Solomon, all of the amounts have been linked up to the satisfaction of the court and by the appropriate evidentiary test and have, in fact, been corroborated. The court well understands that informants may not be model citizens, but it appears to me that there were enough cross-connections in this case for the government to satisfy its burden by a preponderance of the evidence here based on the great cumulative effect of the evidence.

*Id*. at 47. Thus, Astudillo has wholly failed to make out an ineffective assistance claim with regard to the failure to call an expert witness.

**F.    Investigation and Preparation for Sentencing**

Finally, Astudillo alleges that his attorney provided ineffective assistance by failing to adequately investigate the case and prepare for sentencing, and that this is evident in his decision to present no evidence at the sentencing. This claim fails again, as it is wholly unsupported by any evidence, and is contradicted by the record. Even before sentencing, trial counsel made several objections to the presentence report, and presented a number of favorable character letters. Dkt. Nos. 115, 118-123. At sentencing, he pursued his objections, and challenged the government's evidence regarding Astudillo's involvement in the conspiracy alleged by the indictment. He put on evidence that Astudillo lived in such modest means that he could not be reasonably inferred to be a leader in the operation. *Id.* at 43-44. Astudillo's attorney adopted reasonable case strategies and was prepared with a reasonable defense for his client. Astudillo's claim that his counsel failed to prepare for, or do investigation related to, the sentencing hearing fails.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the District Court **DENY** Olegario Hernandez Astudillo's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 218).

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, effective as amended to February 1, 2010, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant.

Astudillo is entitled to a COA only if he made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In explaining this rule as it relates to procedural rulings, the Supreme Court stated, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). On the other hand, in cases where a district court rejected a movant's constitutional claims on the merits, the Supreme Court concluded that "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Similarly, a movant satisfies the COA requirements by demonstrating "that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Notably, this standard does not require the movant to show that an appeal will succeed. *Id.* at 337.

In this case, reasonable jurists could not debate the denial of Astudillo's motion on procedural or substantive grounds, given the lack of merit in the arguments Astudillo puts forward. Accordingly, the undersigned recommends that a COA not be issued.

## VI. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 18th day of June, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE